UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
EL-JURDI, *et al.* :
: CASE NO. 1:11-CV-00520
Plaintiffs, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 11]
EL-BALAH, *et al.* :
:
Defendants. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, Plaintiffs Dr. Raja El-Jurdi and Rose El-Jurdi file suit alleging that the Defendants, Laila Ramez Ghreizi Rawdah El-Balah and Faouzi Rawdah El-Balah, wrongfully instituted legal proceedings against Raja El-Jurdi in this district and in Lebanon. [Doc. 1 at 8.] The Plaintiffs bring claims of malicious civil and criminal prosecution and loss of consortium. [*Id.*] The action was originally filed in the Cuyahoga County Court of Common Pleas, but the Defendants removed the case to federal court on March 14, 2011. [*Id.*] The Defendants said this Court had alienage jurisdiction. On April 13, 2011, the Plaintiffs filed motion to remand this case back to state court, saying that removal was not timely. [Doc. 11.] On May 9, 2011, the Court ordered additional briefing on the issue of the Defendants' domicile and on whether the Court has proper subject matter jurisdiction over this action. [Doc. 18.]

Although the parties did not raise the issue of the Court's subject matter jurisdiction, the

-1-

Case No. 1:11-CV-00520
Gwin, J.

presence or absence of jurisdiction to hear a case is the "first and fundamental question presented by every case brought to the federal courts." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000) (internal citation and quotation marks omitted). Accordingly, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l., Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). This duty arises because federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

A defendant may only remove to federal court those state actions that could have been filed in federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The Defendants say that this Court has proper alienage jurisdiction over the action because the Defendants are citizens of the Republic of Lebanon and the Plaintiffs are citizens of the state of Ohio. [Doc. 19.] The parties do not dispute that the Defendants are domiciled abroad – either in Lebanon or in the United Kingdom. [Doc. 19; Doc. 20.][1] The Defendants concede that they currently live Beirut and London, have not lived in the United States since 2009, do not intend to move back to the United States, and plan on living in Lebanon indefinitely. [Doc. 19.][2] The parties also do not dispute that the Plaintiffs are dual

---

[1] "'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another. For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 47 (1989). The test has also been phrased as "physical presence" in that location and "either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973).

[2] Although not strictly necessary because the Defendants concede that they are domiciled in Lebanon or the United Kingdom, the background of the Defendants provides some context to this dispute and is recited briefly below. Defendant Faouzi El-Balah was born in Lebanon in 1941 and lived there almost exclusively until he moved to the United States in 1986. [Doc. 19 at 3.] His wife, Defendant Laila El-Balah was born in Nigeria in 1952 and has been a citizen of the United Kingdom since her birth. [*Id.* at 2.] Because both of her parents were citizens of Lebanon, she has also been a citizen of Lebanon since her birth. [*Id.* at 2.] Defendant Laila El-Balah lived in Nigeria until she was nine and then primarily lived in Lebanon until 1986, when she moved to the United States with her husband, Defendant Faouzi

Case No. 1:11-CV-00520
Gwin, J.

citizens of the United States and Lebanon who currently reside in Ohio. [Doc. 1 at 9.] Given that the domicile of the parties is not disputed, the Defendants ask the Court to now find that where a party holds dual citizenship – with one citizenship being that of the United States – he or she may sue in federal court under alienage jurisdiction at all times because of the foreign citizenship. [Doc. 19 at 7-11.] Alternatively, the Defendants ask the Court to find that a dual citizen may sue in federal court where their foreign citizenship is "dominant" over their United States citizenship. [*Id.*] As far as the Court is aware, whether a dual citizen who is domiciled abroad may sue in federal court under alienage jurisdiction is an issue that has not been directly resolved in this Circuit.

Under 28 U.S.C. 1332(a)(2), federal courts have jurisdiction over lawsuits, *inter alia*, between "citizens of different states" or between "citizens of a State and citizens or subjects of a foreign state," where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1)-(2). When a citizen of the United States settles abroad, he or she is no longer considered a citizen of any state for purposes of Section 1332(a)(1) and may not sue in federal court under diversity jurisdiction. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989); *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 566 (6th Cir. 1997). However, federal district courts also have alienage jurisdiction over civil actions between citizens of a state and citizens of foreign states under Section 1332(a)(2). 28 U.S.C. § 1332(a)(2). These two provisions of Section 1332(a) seem to demand different outcomes: the former suggests that there is not subject matter jurisdiction over this action because the

---

El-Balah. [*Id.* at 2.] The El-Balahs lived in the United States until 2009, when they moved back to Lebanon. [*Id.* at 3.] Faouzi El-Balah became a citizen of the United States in 1997 and Lalia El-Balah became a citizen of the United States in 1998. [*Id.* at 3.] Since their move from the United States in 2009, Faouzi El-Balah has been living in Lebanon managing a property that his family owns. [*Id.* at 4.] Lalia El-Balah also has been living in Lebanon since then; she has also spent time in the United Kingdom for medical treatment. [*Id.* at 4.] Other than personal possessions left in London, all of the El-Balahs' property is in Lebanon, they consider Lebanon their permanent home, and they have not returned to the United States since their move in 2009. [*Id.* at 4-5.]

Case No. 1:11-CV-00520
Gwin, J.

Defendants are American citizens domiciled abroad, and the latter suggests that there is jurisdiction because the Defendants are citizens of a foreign state.

In *Sadat v. Mertes*, the Seventh Circuit Court of Appeals addressed the relationship between 28 U.S.C. § 1332(a)(1) and (2), and ultimately decided that it would be inconsistent with the underlying purposes of the diversity statute to allow a United States citizen, who lives abroad and who also is a foreign citizen, to sue in federal court because of their foreign citizenship when a similar person who is only a citizen of the United States could not also sue in federal court. 615 F.2d 1176, 1182-86 (7th Cir. 1980). The *Sadat* court noted that allowing jurisdiction would grant additional rights to United States citizens who happen to possess a foreign citizenship, and the court also reasoned that finding alienage jurisdiction would not serve any of the underlying purposes of that provision. *Id.* The *Sadat* court thus found that the United States citizenship would control and held that there was not proper subject matter jurisdiction. *Id.*

This holding was recently reaffirmed by the Seventh Circuit and it has been adopted by multiple circuits and districts that considered the issue. *See Buchel-Reugsegger v. Buchel*, 576 F.3d 451, 453-54 (7th Cir. 2009) (holding that a U.S.-Swiss dual citizen cannot sue a Wisconsin citizen in federal court); *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400 (3d Cir. 2008) (stating that "for purposes of diversity jurisdiction, only the American nationality of a dual national is recognized"); *see also Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996) (finding a U.S.-French dual citizen not entitled to alienage jurisdiction and noting "there is an emerging consensus among courts that, for a dual national citizen, only the American citizenship is relevant for purposes of diversity"); *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir.1992); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991); *Las Vistas Villas, S.A. v. Petersen*, 778 F. Supp. 1202

-4-

Case No. 1:11-CV-00520
Gwin, J.

(M.D. Fla. 1991), *aff'd*, 13 F.3d 409 (11th Cir.1994); *Oteng v. Golden Star Res., Ltd.*, 615 F. Supp.2d 1228, 1235 (D. Colo. 2009); *Ayenu v. Chevy Chase Bank, F.S.B.*, 496 F. Supp.2d 607, 610 (D.Md. 2007); *Falken Indus., Ltd. v. Johansen*, 360 F. Supp.2d 208, 210 (D. Mass. 2005).

In *Von Dunser v. Aronoff*, the Sixth Circuit considered whether a dual citizen who is domiciled abroad may sue in federal court, but it never directly resolved the issue. 915 F.2d 1071(6th Cir. 1990). However, in dicta, the decision spoke favorably of the approach taken in *Sadat* and also indicated that the rule should be used in this Circuit. *Id.* at 1074-75.[3/] Thus, although there is no binding precedent in this Circuit, to hold that a dual citizen may always sue in federal court under alienage jurisdiction would be inconsistent with *Von Dusen* and would hold differently than the other courts that considered the issue. In determining subject matter jurisdiction, the correct approach is to only consider the United States citizenship. Indeed, "the major purpose of alienage jurisdiction is to promote international relations by assuring other countries that litigation involving their nationals will be treated at the national level, and alienage jurisdiction is also intended to allow foreign subjects to avoid real or perceived bias in the state courts – a justification that should not be available to the dual citizen who is an American." *Coury*, 85 F.3d at 250. Moreover, once a foreign national becomes a citizen of the United States, he or she should be treated on the same terms as any other United States citizen, including not being able to sue in diversity when domiciled abroad. *Id.* at 250; *Frett-Smith*, 511 F.3d at 400. The mere fact that he or she possesses a foreign citizenship should not afford them additional rights not enjoyed by other United States citizens. *Id.* at 400.

---

[3/] In *Van Dusen*, the plaintiff was born in Austria, obtained a United States citizenship, and was domiciled in Florida. He then moved back to Europe. Since the plaintiff raised the issue of subject matter jurisdiction for the first time on appeal, the Sixth Circuit found that it did not have the facts it deemed necessary to resolve the true domiciles of the parties and remanded for determination of the relevant facts. *Id.* at 1072-76. The Court, thus, did not have to resolve whether the *Sadat* rule would apply. *Id.* 1072-76.

Case No. 1:11-CV-00520
Gwin, J.

In *Sadat*, the Seventh Circuit identified a potential exception to the rule that a United States dual citizen may not sue in federal court when domiciled abroad, theorizing that suing under alienage jurisdiction may be possible where a party's "dominant nationality is that of a foreign country." 615 F.2d at 1187; *see also* *Buchel*, 576 F.3d at 454 n.2. In *Von Dunser*, the Sixth Circuit also noted that potential exception, but did not decide whether it should be adopted. 915 F.2d at 1073 n.3. This "dominant nationality" test has not been adopted by any court since *Sadat*, and even the *Sadat* court only considered that test in passing as a hypothetical and declined to adopt it. 615 F.2d at 1187. Whether or not this dominant nationality test exists – which seems doubtful – the Court need not consider it because the exception would only apply where the dual citizen "has taken all reasonably practicable steps to avoid or terminate his status as a national of the [United States]." *Id.* Here, the Defendants have lived outside of the United States for less than two years and have made no effort whatsoever to terminate their United States citizenship. Because they did not take "all reasonably practicable steps" to divest their United States citizenship, the possible exception in *Sadat* is inapplicable.

For the foregoing reasons, the Court finds that it does not have proper subject matter jurisdiction over this case and **GRANTS** the Plaintiffs' motion to remand to state court.

IT IS SO ORDERED.


Dated: June 14, 2011            s/    *James S. Gwin*
                                JAMES S. GWIN
                                UNITED STATES DISTRICT JUDGE